**ORSBURN et al. v. FIRST STATE BANK OF SULPHUR SPRINGS.** (No. 3355.)

Court of Civil Appeals of Texas. Texarkana. April 1, 1927.

Rehearing Denied April 7, 1927.

1. Trial ⬅️140(1)—Jury is judge of credibility of witnesses.

Jury is judge of credibility of witnesses.

2. Homestead ⬅️214—In suit to foreclose vendor's lien, finding that deed was executed to convey title, but not merely to create lien on homestead, held sustained by evidence.

In suit to foreclose vendor's lien against land owned by defendant, evidence *held* sufficient to sustain finding of jury that deed was given in good faith with intention to convey title, and not merely to create a lien on defendant's homestead.

Appeal from District Court, Hopkins County; J. M. Nelson, Judge.

Suit by the First State Bank of Sulphur Springs against R. L. Orsburn and another. From the judgment, defendants appeal. Affirmed.

R. D. Allen, of Sulphur Springs, for appellants.

Ramey & Davidson, of Sulphur Springs, for appellee.

HODGES, J. The appellee bank instituted this suit against G. C. Kennedy and R. L. Orsburn to recover upon 7 notes of $400 each, and to foreclose a vendor's lien upon a tract of land owned by Orsburn situated in Hopkins county. It was alleged that Orsburn and his wife sold the land to Kennedy, and as a part of the consideration therefor Kennedy had executed the notes, which were later transferred to the bank by Orsburn, together with the superior legal title. Several weeks after the transfer of the notes Kennedy reconveyed the land to Orsburn, who assumed the payment of the notes. The deed recited that assumption of payment as a part of the consideration. Orsburn, joined by his wife, answered that the land involved was their homestead at the time of the execution of the deed to Kennedy and since that time. They alleged that the deed to Kennedy was the result of a scheme to place a lien upon the homestead, participated in by the representative of the bank and Kennedy; that in the original agreement Kennedy was to reconvey the land to Orsburn after the notes had been executed and transferred; that the use made of the notes was to secure the payment of Orsburn's indebtedness to the bank, on which indebtedness Kennedy was a surety. They prayed for a cancellation of the deed. Kennedy filed no answer. The appellee bank in a supplemental petition denied the above averments of Orsburn and his wife, and alleged that it was a purchaser of the notes in good faith; that Orsburn had transferred the notes for a valuable consideration before maturity, and that appellee had neither actual nor constructive notice of any defect in the conveyance of the land or of the alleged plan or scheme to encumber the homestead; that Orsburn had represented to it that the notes were valid obligations and were secured by a valid lien on the land. It further alleged that the deed from Orsburn and wife to Kennedy was made in good faith by the parties, and with the intent to convey the title of the land to Kennedy.

The case was submitted to the jury upon special issues, the following being the only one which was answered:

"Do you find from a preponderance of the evidence, that the execution and delivery of the deed from the defendants R. L. Orsburn and wife to G. C. Kennedy was made in good faith, and that the intention of the parties to the transaction was to convey the title of said land to G. C. Kennedy? Answer: Yes."

The above answer made the remaining questions immaterial. A judgment was entered in favor of the bank against Orsburn and Kennedy for the debt and for foreclosure of the lien upon the land.

Practically the only assignment of error presented in this appeal is one in which it is asserted that the verdict and judgment are not supported by the evidence. It appears from the undisputed testimony that for several years the bank had been carrying an indebtedness of Orsburn's, evidenced by one or more notes, on which Kennedy was a surety. About the time or a little before the land was conveyed to Kennedy, the bank began pressing Orsburn and Kennedy for payment. According to Orsburn's testimony, the execution of the deed to Kennedy and the reconveyance of the land to him was for the purpose of mortgaging the land and thereby enabling Orsburn to obtain vendor's lien notes which he could pledge or assign to the bank as security for his indebtedness, and enable him to secure an additional loan. He stated that Bridges, the representative of the bank, was cognizant of the scheme and to some extent participated in it. Bridges testified to the contrary. Kennedy also contradicted Orsburn upon that issue. Among other things, Kennedy testified:

"Mr. Orsburn came to me on the public square (at Sulphur Springs), and he said, 'I don't think Mr. Bridges is going to furnish me with supplies to make this next crop on unless we do something in addition to the security,' and I said, 'I don't think so myself;' and I says, 'My 95 acres of land is gone for this security' (meaning for Orsburn), and I says, 'It looks to me like all of it will be fair that you sell your land to somebody to see if we cannot carry it further—to see if we both can't come out.' He says, 'I will sell it to you,' and I said,

---

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

'If I cannot find a buyer, I will do that,' and finally he came to me. At that time all he said about it was in a casual way. He said, 'If I ever get to where I can buy that land back, will you sell it to me?' and I told him I would because I had more land than I wanted. Yes; the deed was absolutely bona fide; that is, the deed to me and the notes to the bank. The first time when we got over to the bank he wanted to sell the land to Mr. Bridges, and Mr. Bridges told him he did not want the land, and I told him I would rather he would sell it to somebody else. and he said he would rather sell it to me because I would sell it back to him if he got to a place where he could handle it, and I said, 'I will see you to-morrow,' and the next day he came in and said he would sell it to me. I didn't go to him. We then went to the First State Bank, and then went to O. E. Walters to prepare the deed; and Mr. Bridges had nothing to do with the preparation of the deed. * * * When we got to Mr. Walters, we just had the deed wrote and $2,800 of vendor's lien notes wrote, and I signed the notes, and he signed the deed. * * * At the time I signed those notes I had a bona fide intention of paying off the notes and owning the land."

The evidence shows that the deed from Orsburn to Kennedy was made on January 24, 1925, and Kennedy's deed ,back to Orsburn was made on March 4, 1925.

[1] It will be observed that there is a sharp conflict between the testimony of Orsburn on one side, and Bridges and Kennedy on the other. That, made an issue of credibility, which the jury had a right to settle as it did. If the version given by Bridges and Kennedy is true, the transaction was not a mere device to encumber the homestead, but was a bona fide sale, notwithstanding the reconveyance by Kennedy to Orsburn.

[2] We think there is sufficient evidence to support the findings of the jury, and the judgment will be affirmed.